UTICA,
August, 1829.

Poucher
v.
Holley,

POUCHER *vs.* HOLLEY, sheriff of Columbia.

A bond for the limits, given by a defendant who had been charged in execution, and to whom the plaintiff had previously given permission to go at large, beyond the jail liberties, does not revive the judgment, so that an action can be maintained against the sheriff for an escape.

Although it was not the intention of the plaintiff to discharge the debt, a voluntary discharge by a creditor of his debtor from the limits discharges the judgment and the debt.

THIS was an action of debt against the defendant, as sheriff of the county of Columbia, for the escape of a prisoner in execution, tried at the Columbia circuit, in September, 1827, befeore the Hon. WILLIAM A. DUER, one of the circuit judges.

The plaintiff had a judgment against one Reuben Ranny, on which he caused a *ca. sa.* to be issued, by virtue of which Ranny was arrested previous to its return, to wit, the first Monday of January, 1823, by James Warren, then sheriff of Columbia. On the 1st January, 1823, Ranny was assigned as a prisoner in execution by Warner to Samuel E. Hudson, his successor in office, who, on the 2d January, 1826, assigned him to his successor, the defendant in this cause, and Ranny on the same day gave to the defendant a bond for the limits, conditioned that he would remain a true and faithful prisoner, &c. on the said *ca. sa.* at the suit of the plaintiff. When the bond was required from Ranny he rather demurred; but upon being told by the sheriff that he had been assigned to him as a prisoner in execution, and that he must give the bond, he answered that he had been discharged by Poucher, and did not consider himself a prisoner, but to oblige the sheriff, he would execute the bond for formality's sake. An escape was proved on the 9th March, 1827, and the issuing of a *capias* against the defendant was shewn.

On the part of the defendant, is was proved that in the month of April, 1824, the plaintiff told a witness that he had given permission to Ranny to go where he pleased, and that he (the witness) might so inform Ranny; and that in July or August, 1825, in a conversation between the plaintiff and Ranny, on the latter asking the plaintiff why he kept him *here*, (meaning on the limits,) the plaintiff answered, " I do not keep you here, and I have told you so long ago." Ranny replied, " Why do you not go, then, and inform Rogers, the jailer, so that he need not be all the time bothering me ;"

and the plaintiff rejoined, "What use is that, Colonel? Go where you please now."

There was a mass of testimony as to Ranny's going, from time to time, beyond the limits, which had been altered after his first committal. He insisted that he was entitled to the liberties as they existed when he was first arrested, and would not regard the new limits. It also appeared that he was willing to have it believed that he was a prisoner on the limits, saying to a witness, who remarked to him that he was beyond his bounds, that he was not obliged to keep the limits; that Poucher had discharged him; but adding, "You know how it is; there are some little debts against me, and I don't want to be bothered with them." The judge charged the jury that although Poucher discharged Ranny from the limits while Hudson was sheriff, yet if Ranny afterwards voluntarily executed the limit bond to the defendant, the defendant was liable for any escape subsequent to the execution of that bond; that if they were of opinion that Ranny did not execute the limit bond voluntarily, but at the time claimed his exemption and discharge, and denied his liability to imprisonment, still, unless they were fully satisfied that Poucher had discharged him from the limits, they must find for the plaintiff; and they must be satisfied that Poucher intended, at the time alleged, to give Ranny a legal discharge from the debt, or else the defendant was liable. The jury found for the plaintiff for the amount of the debt. A motion was now made to set aside the verdict.

*A. L. Jordan*, for defendant.

*E. Williams*, for plaintiff.

*By the Court*, SUTHERLAND, J. The learned judge appears to me to have erred in two particulars; 1. In stating that a voluntary execution of the limit bond to the defendant by Ranny, after he had been discharged from the limits by Poucher, the plaintiff, would constitute him a prisoner to the defendant, so that the defendant would be liable for any subsequent escape. 2. In stating, that although the jury might be satisfied that Poucher had discharged Ranny from the lim-

its, still, *unless they were also satisfied that he intended, at the time alleged, to give Ranny a legal discharge from the debt,* the defendant would be liable. In *Powers* v. *Wilson,* (7 Cowen, 276,) the court says, it is well settled that if a creditor gives his debtor, who is in execution permission to go at large beyond the gaol liberties, *the judgment is discharged;* and the plaintiff can neither issue a new execution, *nor maintain an action for the escape against the sheriff,* and the following cases are cited in support of the position ; Barnes, 205 ; 2 East, 243 ; 7 T. R. 420 ; 6 T. R. 525 ; 5 Johns R. 364 ; 11 id. 476 ; 2 Johns. Ch. R. 430 ; 16 Johns. R. 183 ; 1 Barn. & Ald. 597 ; in all of which the same doctrine is clearly and distinctly advanced. If the judgment is discharged. the bond for the liberties subsequently given is a mere nullity ; it has no efficacy independently of the judgment, and that cannot be revived and restored by the giving of a new bond for the limits ; not only the judgment but the debt is gone. No matter what the actual intention of the plaintiff in the execution may have been, the judgment of law is, that a voluntary discharge of his creditor from the limits discharges the judgment and the debt. In almost all the reported cases it appears affirmatively that nothing was more remote from the intention of the plaintiffs than to discharge their judgment, or in any manner impair their security. In *Yates* v. *Van Rensselaer* & *Schermerhorn,* (5 Johns. R. 364,) the defendants covenanted and agreed that the plaintiff might re-take them on the same execution or issue a new execution against them and confine them until the debt and costs were paid ; and yet it was held, that as the plaintiff had given them permission to go beyond the gaol liberties, *the debt was discharged,* and the arrest of the defendants was illegal and amounted to false imprisonment. A new trial must therefore be granted.